# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| KINLEY MACDONALD,<br><br>   *Plaintiff*,<br><br> v.<br><br>JARED DACKERS, STEVEN BOYCE, WILLIAM TORRES, JENNIFER LYNCH, JANE DOE, JOHN DOE, DANEKA BARBOUR, ERIK DOLDT, JAMES WIRTZ, MARY MARREN, DANIEL FITZGIBBON,<br><br>   *Defendants*. | Civil Action No. 1:22-cv-12233-AK |

## FIRST AMENDED COMPLAINT

Plaintiff Kinley MacDonald ("Plaintiff" or "Ms. MacDonald"), by and through her attorneys,[1] hereby alleges as follows:

## INTRODUCTION

1.      This Amended Complaint seeks redress for the injuries Ms. MacDonald suffered as a result of horrific and unprovoked assaults that occurred while she was in the custody of the Suffolk County Sheriff's Department ("SCSD") at the Suffolk County House of Corrections ("SCHOC"). These assaults—and their aftermath—were documented by SCSD and SCHOC through videos and photos. Those videos and photos show SCSD and SCHOC's blatantly illegal and unconstitutional violence, intimidation, and humiliation of Ms. MacDonald. They also conclusively disprove any suggestion that the officers' attacks were provoked. Even SCSD was forced to admit that the officers' false accusations that Ms. MacDonald assaulted or fought the officers was "UNSUBSTANTIATED IN VIDEO."

2.      There are at least four assaults at issue. First, on August 9, 2022, while being booked into SCHOC, SCSD officers unlawfully assaulted, severely injured, and mocked Ms. MacDonald. During the assault, officers Steven Boyce ("Boyce") and Jared Dackers ("Dackers") slammed Ms. MacDonald head-first to the ground, rendering her unconscious and leading to a large laceration on her face. Under the supervision and instruction of Lieutenant William Torres ("Torres") and Sergeant Jennifer Lynch ("Lynch"), Boyce and Dackers kept Ms. MacDonald pinned to the ground as copious amounts of blood pooled by her head. Security camera footage shows the officers slamming Ms. MacDonald into the ground, where she remained for many

---

[1] Pursuant to the Court's June 22, 2023, and January 10, 2024, Orders (ECF Nos. 19, 26), Ms. MacDonald's below-signed *pro bono* counsel from Goodwin Procter LLP—Eric T. Romeo, Christie L. Larochelle, Laura Noerdlinger, Jonathan E. Rankin, and Adrian Santiago Ortiz—have been appointed for the limited purpose of preparing and filing this First Amended Complaint.

minutes.  And contemporary photos taken by an SCSD officer show Ms. MacDonald, unconscious, with a bloodied, lacerated face and hair caked in blood.

3.      Second, following the initial assault, an unknown assailant—Jane Doe—painfully dug her fingers into Ms. MacDonald's neck and then slammed her head into a metal desk, causing further injury.

4.      Third, another unknown assailant—John Doe—slammed his keys into the metal desk directly next to Ms. MacDonald's ear before he cuffed her tightly behind her back, removed the mattress from the bed in her cell and slammed her forcefully down on the bed.

5.      Fourth, on August 10, 2022, five additional SCSD officers—Daneka Barbour ("Barbour"), Erik Dolt ("Dolt"), James Wirtz ("Wirtz"), Mary Marren ("Marren"), and Daniel Fitzgibbons ("Fitzgibbons")—assaulted Ms. MacDonald by performing an unnecessary and invasive forced strip search of her body.  Torres was also present during and supervised this assault.  The assault was recorded on video.  That video shows that Ms. MacDonald stated she would cooperate with the search.  Nevertheless, the group of officers—including several male officers— cut off all her clothes, including her bra and underwear, while she lay cuffed by her hands and feet on the cold frame of her bed (which was still missing its mattress).  The officers then left her, naked and humiliated, in her cold cell.

6.      The conduct of SCSD employees caused Ms. MacDonald serious physical injuries and emotional distress that persist even today.

7.      Pursuant to 42 U.S.C. § 1983 and the laws of the State of Massachusetts, Ms. MacDonald brings this Amended Complaint against officers Steven Boyce, Jared Dackers, William Torres, Jennifer Lynch, Jane Doe, John Doe, Daneka Barbour, Erik Doldt, James Wirtz,

Mary Marren, and Daniel Fitzgibbon, to seek recovery for the harm that she has suffered—and continues to suffer to this day—as a result of the abuse she received at their hands.

## JURISDICTION AND VENUE

8.    Jurisdiction is proper under 28 U.S.C. §§ 1331, 1343, and 1367.

9.    This suit is based on a federal question and statute, namely, 42 U.S.C. § 1983.

10.    Supplemental jurisdiction over the causes of action under Massachusetts state law is proper pursuant to 28 U.S.C. § 1367, as the state law claims are substantially related to the causes of action over which this Court has original jurisdiction such that they form part of the same case or controversy under Article III of the United States Constitution.

11.    Venue is proper under 28 U.S.C. § 1391 because Defendants do and transact business, and have committed the tortious acts complained of herein, within this judicial district.

## PARTIES

### i. Plaintiff

12.    Plaintiff Kinley MacDonald is an individual who, at the time of the events detailed herein, resided in Brighton, Massachusetts.

### ii. Defendants

13.    The named Defendants in this Amended Complaint were at all relevant times either employed by, or operating under the authority of, SCSD.    According to its website (https://scsdma.org/), SCSD administers the SCHOC, located at 20 Bradston Street, Boston, MA 02118.

14.    Defendant Jared Dackers is an individual who was at all relevant times employed as a correctional and/or law enforcement officer at SCSD.  Upon information and belief, Dackers worked in Massachusetts at the SCHOC at the time of the events.  His actions alleged in this

Amended Complaint were taken under the color of the laws of the Commonwealth of Massachusetts. He is sued in both his individual capacity and his official capacity as an SCSD officer for events that took place within the District of Massachusetts.

15.    Defendant Steven Boyce is an individual who was at all relevant times employed as a correctional and/or law enforcement officer at SCSD. Upon information and belief, Boyce worked in Massachusetts at the SCHOC at the time of the events. His actions alleged in this Amended Complaint were taken under the color of the laws of the Commonwealth of Massachusetts. He is sued in both his individual capacity and his official capacity as an SCSD officer for events that took place within the District of Massachusetts.

16.    Defendant William Torres is an individual who was at all relevant times employed as a correctional and/or law enforcement officer at SCSD. Upon information and belief, Torres worked in Massachusetts at the SCHOC at the time of the events. His actions alleged in this Amended Complaint were taken under the color of the laws of the Commonwealth of Massachusetts. He is sued in both his individual capacity and his official capacity as an SCSD officer for events that took place within the District of Massachusetts.

17.    Defendant Jane Doe is an individual who was at all relevant times employed as a correctional and/or law enforcement officer at SCSD. Upon information and belief, Jane Doe worked in Massachusetts at the SCHOC at the time of the events. Her actions alleged in this Amended Complaint were taken under the color of the laws of the Commonwealth of Massachusetts. She is sued in both her individual capacity and her official capacity as an SCSD officer for events that took place within the District of Massachusetts.

18.    Defendant John Doe is an individual who was at all relevant times employed as a correctional and/or law enforcement officer at SCSD. Upon information and belief, John Doe

worked in Massachusetts in the SCHOC at the time of the events. His actions alleged in this Amended Complaint were taken under the color of the laws of the Commonwealth of Massachusetts. He is sued in both his individual capacity and his official capacity as an SCSD officer for events that took place within the District of Massachusetts.

19.     Defendant Daneka Barbour is an individual who was at all relevant times employed as a correctional and/or law enforcement officer at SCSD. Upon information and belief, Barbour worked in Massachusetts at the SCHOC at the time of the events. Her actions alleged in this Amended Complaint were taken under the color of the laws of the Commonwealth of Massachusetts. She is sued in both her individual capacity and her official capacity as an SCSD officer for events that took place within the District of Massachusetts.

20.     Defendant Erik Doldt is an individual who was at all relevant times employed as a correctional and/or law enforcement officer at SCSD. Upon information and belief, Doldt worked in Massachusetts at the SCHOC at the time of the events. His actions alleged in this Amended Complaint were taken under the color of the laws of the Commonwealth of Massachusetts. He is sued in both his individual capacity and his official capacity as an SCSD officer for events that took place within the District of Massachusetts.

21.     Defendant James Wirtz is an individual who was at all relevant times employed as a correctional and/or law enforcement officer at SCSD. Upon information and belief, Wirtz worked in Massachusetts at the SCHOC at the time of the events. His actions alleged in this Amended Complaint were taken under the color of the laws of the Commonwealth of Massachusetts. He is sued in both his individual capacity and his official capacity as an SCSD officer for events that took place within the District of Massachusetts.

22.    Defendant Mary Marren is an individual who was at all relevant times employed as a correctional and/or law enforcement at SCSD.  Upon information and belief, Marren worked in Massachusetts at the SCHOC at the time of the events.  Her actions alleged in this Amended Complaint were taken under the color of the laws of the Commonwealth of Massachusetts.  She is sued in both her individual capacity and her official capacity as an SCSD officer for events that took place within the District of Massachusetts.

23.    Defendant Daniel Fitzgibbon is an individual who was at all relevant times employed as a correctional and/or law enforcement officer at SCSD.  Upon information and belief, Fitzgibbon worked in Massachusetts at the SCHOC at the time of the events.  His actions alleged in this Amended Complaint were taken under the color of the laws of the Commonwealth of Massachusetts.  He is sued in both his individual capacity and his official capacity as an SCSD officer for events that took place within the District of Massachusetts.

## FACTUAL ALLEGATIONS

24.    On Monday, August 8th, 2022, around 6:00 PM, Officer Ryan Egan of the Boston Police Department ("BPD"), District D-14, arrested Ms. MacDonald following a traffic stop in the vicinity of 203 Bigelow Street, Brighton, Massachusetts.  Officer Egan purported to be executing an extraditable warrant for Ms. MacDonald originating from York County, Maine. Ms. MacDonald's interactions with BPD are all captured on video.  That video makes clear that Ms. MacDonald cooperated with the BPD officers throughout her arrest and transfers.

25.    Shortly following her arrest, Ms. MacDonald was booked by BPD Officer Arthur Lonergan and placed in custody.  Ms. MacDonald remained in BPD custody until the following day.

26.    Ms. MacDonald had no issues during her time in BPD custody.  She fully cooperated with BPD and BPD treated her professionally.

27.    On Tuesday, August 9th, 2022, around 5:00 PM, BPD transferred Ms. MacDonald to the SCHOC, where she was placed into the custody of SCSD.

28.    Ms. MacDonald explained to Sergeant Lynch that she was feeling "shocky" and unsteady on her feet.  She requested medical care for injuries sustained prior to being taking into custody, including an injury to her left arm.  Ms. MacDonald's requests for medical care were ignored.

29.    Shortly after, around 6:20 PM, Sergeant Jennifer Lynch ordered Ms. MacDonald be transferred to the booking area for a photograph.

30.    Dackers and Boyce took hold of Ms. MacDonald by her arms, including her already-injured left arm, causing her significant pain and discomfort.  Dackers and Boyce dragged Ms. MacDonald to the booking area where they ordered her to stand against the wall to be photographed.

31.    At or around 6:23 PM, Boyce and Dackers forcibly moved Ms. MacDonald into position for the photograph.  Ms. MacDonald at all times attempted to comply with Boyce and Dackers's orders to stand in the correct location.

32.    Despite Ms. MacDonald's attempts to comply, Boyce and Dackers, without warning, slammed Ms. MacDonald onto the floor, twisting her arms behind her back and forcing her face-first to the ground.  Still images from SCSD surveillance video depicting this assault are reproduced below in Figures 1a through 1d.[2]

---

[2] The below still images are taken from SCSD video footage and show the assault on Ms. MacDonald. Plaintiff obtained these videos, and the reports that accompanied them, from SCSD on June 6, 2024 following a request for documents and video regarding Kinley MacDonald.

*Figure 1a:*



*Figure 1b:*



*Figure 1c:*



*Figure 1d:*



33.    As a result of the assault by Boyce and Dackers, Ms. MacDonald lost consciousness

and suffered a deep laceration above her left eye as well as a cracked tooth.

34.     After the assault, Boyce and Dackers deliberately lied about what happened in attempt to justify their unprovoked violence.  Incident reports received from SCSD describe the attack but each report misrepresents the justification for the use of force.  In an incident report submitted by Boyce on August 9, 2022, for example, Boyce states that Ms. MacDonald "slapped his hand … [and] she raised her other hand as if she was going to strike [him]."  No such actions on the part of Ms. MacDonald are shown in the video footage.  Other reports from Torres and Dackers, submitted on the same day, parroted similar language.

35.     On August 12, 2022, SCSD issued a summary report concluding that the allegations by Torres, Boyce, and Dackers regarding physical contact by Ms. MacDonald were "UNSUBSTANTIATED IN VIDEO."

36.     The video evidence establishes that Boyce and Dackers pinned an unconscious Ms. MacDonald to the floor, face down, and handcuffed her while a large amount of blood pooled around her head.

37.     At or around 6:25 PM, a nurse employed by SCSD asked Boyce and Dackers to notify operations that additional medical staff was needed on scene.  The officers then pressed their knuckles against Ms. MacDonald's sternum in an attempt to stimulate her into consciousness.

38.     At or around 6:30 PM, additional medical personnel arrived and provided Ms. MacDonald with only minimal treatment, wrapping her head in gauze.

39.     Barbour took photographs of Ms. MacDonald's injuries while she was unconscious on the floor with blood caking her face and hair.  The images in Figures 2a through 2c, below, show the extent of Ms. MacDonald's injuries and bleeding as a result of the assault.[3]

---

[3] The below images are taken from SCSD files delivered to Ms. MacDonald's counsel on June 3, 2024.

*Figure 2a:*



*Figure 2b:*



*Figure 2c:*



40.    Torres then ordered Ms. MacDonald to be restrained in a wheelchair.  Ms. MacDonald could barely sit up in the wheelchair as she was drifting in and out of consciousness, causing her to drop her head and slouch in the chair.

41.    The officers held Ms. MacDonald's bloody head up by her hair and by pulling on her clothing, which they tightened around her neck, to take a booking photo while she continued to drift in and out of consciousness.  The manner in which the officers held Ms. MacDonald choked her. The officers jeered at her, calling the incident her "weekend at Bernie's" and claiming—despite her obvious injuries—that she was somehow "faking it."  Still images from SCSD surveillance video depicting these events are depicted below in Figures 3a and 3b.

*Figure 3a:*



*Figure 3b:*



42.    Around 6:44 PM, SCSD officers then transported Ms. MacDonald to 6-2-1 Cell

#19 ("Cell #19") in the SCHOC medical facility via wheelchair.  As they transported her, her feet

dragged against the floor, tangling up underneath the wheelchair. Her head was also not secured, causing it to sway painfully back and forth. The officers' attempt to hold up her head caused further choking. The officers did not provide her with any further treatment or evaluation of her obvious injuries.

43.    Ms. MacDonald remained in Cell #19 in the medical facility overnight without medical treatment. Ms. MacDonald repeatedly begged for help, which she did not receive. The pain was so severe that Ms. MacDonald was forced to slide down her bed to urinate on to the floor–which the officers angrily berated her for the following day, August 10. During the night, one of the officers who assaulted Ms. MacDonald during booking entered the medical cell without warning or cause and slammed his keys down on the sink to frighten her. Ms. MacDonald was asleep at the time and was awakened by the sudden noise. It sounded like a gunshot. Ms. MacDonald was terrified that the officer had come to her cell to shoot her.

44.    Throughout her time in Cell #19, Ms. MacDonald requested medical attention. The SCSD officers denied her medical attention and said "that's what you get when you get assaultive with an officer."

45.    Around 1:00 PM, the following day, Ms. MacDonald was transferred to 10-10-3 Cell #5 ("Cell #5"), solitary confinement. In Cell #5, even though Ms. MacDonald was barely able to hold herself up by holding onto the wall, the officers demanded she stand up and change to a different set of clothes. Because she was unable to, an unknown female officer, Jane Doe, pushed Ms. MacDonald's head down, calling her names and cursing at her while grabbing her by the back of the head to slam her already injured face into a desk, and then digging her fingers into her neck forcefully causing her further pain. Ms. MacDonald was not resisting the officer through the

duration of this encounter.  Nevertheless, the officer's speech and actions made clear that she was incredibly frustrated and angry, which she took out on Ms. MacDonald.

46.    An unknown male officer, John Doe, had followed Ms. MacDonald to Cell #5. John Doe cuffed Ms. MacDonald's hands tightly behind her back.  John Doe then removed the mattress from the bed in Cell #5, declaring that Ms. MacDonald was a "bitch" and did not deserve a mattress.  He slammed Ms. MacDonald, who was still restrained with her hands behind her back, face first onto the naked bed.  She was left there, handcuffed.  Ms. MacDonald recalls that during the hours that she lay there—handcuffed and face down into the naked bed frame—she experienced immense pain and felt as though her shoulders were slowly separating from their sockets.

47.    Later that day, Ms. MacDonald was told that the only way to be uncuffed was to stand and change her clothes or have the extraction team cut off her clothes.  After repeatedly ignoring Ms. MacDonald's requests for medical attention, Captain Lauren Kelly ordered Ms. MacDonald to be strip searched.

48.    Ms. MacDonald explained she could not comply with the strip search and needed medical attention.  She requested to see a doctor and expressed that she had severe head and neck pain, that she was experiencing dizziness, and that she was unable to stand without assistance.

49.    At Kelly's request, a mental health worker and a nurse Shiela Davidian evaluated Ms. MacDonald.  Murphy and Davidian "cleared" Ms. MacDonald to remain in her cell and stated that she did not require further medical assistance.

50.    Other SCSD officers, Angela Pina, T. Lee, and Andres Lopez, also ordered Ms. MacDonald to comply with a strip search, but she continued to state that she was unable to do so

and required immediate medical treatment.  The officers ignored Ms. MacDonald's pleas for medical attention and left her in her bunk, restrained, and in excruciating pain.

51.    At or around 3:04 PM, Captain Kelly transferred supervision of Ms. MacDonald to Lieutenant William Torres, who subsequently ordered a forced strip search.

52.    At or around 5:00 PM, officers Barbour, Doldt, Wirtz, Marren, and Fitzgibbons arrived, purportedly to conduct a search of Ms. MacDonald's person.  This occurred a day after Ms. MacDonald arrived at the SCHOC.  No SCSD officer explained why it was necessary for numerous officers to keep her restrained, hold her down, and cut the clothes off her body after she had been searched in BPD custody and had been at the SCHOC for a full day.

53.    The officers filled Ms. MacDonald's cell and surrounded the cot on which she was lying.  They forcibly held Ms. Macdonald down in her bunk by her wrists, with both hands and feet handcuffed, despite her complaints of pain and repeated statements that she wanted to comply.  The officers first forced Ms. MacDonald onto her side to shear off a portion of her pants with scissors and rip the rest off with their hands.  They did the same for a portion of her shirt while forcibly manipulating her back and forth to remove the garment.  They then fully exposed her body, shearing off her underwear and undershirt, and bra.  Two officers searched Ms. MacDonald's body, manipulating her injured arms, spreading her naked legs apart, and ripping off her toe ring despite her pained cries.  Once finished with the search, the officers left Ms. MacDonald lying naked on the bed in her cell bunk—which still did not have a mattress.

54.    SCSD videotaped the entire incident.  Throughout the incident, Ms. MacDonald was frightened and distressed, sometimes crying out in pain.  Regardless, the officers handled her injured arm roughly, causing her even more pain.

55.     Several stills from that video are reproduced in Figures 4a through 4d,[4] below, including images of officers crowding around Ms. MacDonald while she lies restrained on a cot and a male officer cuts off her undergarments; officers standing around Ms. MacDonald while she lay restrained and fully naked; officers manipulating and exposing Ms. MacDonald's naked body; and Ms. MacDonald lying naked in the cell.

*Figure 4a:*



---

[4] The below images are taken from SCSD files delivered to Ms. MacDonald's counsel on June 3, 2024.

*Figure 4b:*



*Figure 4c:*




*Figure 4d:*



56.     After the forced strip-search, Ms. MacDonald was left naked in her cold cell.  The officers left her change of clothes out of reach, forcing Ms. MacDonald to drag them towards her using her feet.  She was still unable to stand making it extremely difficult for her to get dressed.

57.     A mattress was eventually thrown in Ms. MacDonald's cell, which she was forced to attempt to set on the bed herself.  Because she was still unable to stand, she was only able to slightly set the mattress on the bed.  Eventually, a blanket was provided as well, which Ms. MacDonald used as a makeshift neck brace to alleviate her head and neck pain.

58.     Ms. MacDonald was refused food unless she was able to drag herself from her bed. When she was unable to reach her food in time the officers would slam the trap door through which food was provided creating a loud noise which exacerbated Ms. MacDonald's head pain.

59.     As she was unable to stand, Ms. MacDonald was unable to use the commode in her cell.  Instead she had to urinate in small drink cups, which the officers did not remove from her

cell despite Ms. MacDonald's repeated pleas.  The urine-filled cups were not removed from Ms. MacDonald's cell until another prisoner (a "trustee") intervened.

60.    Despite Ms. MacDonald's repeated requests for medical attention, it took several days before Ms. MacDonald again encountered the medical staff at SCHOC.  While the medical staff acknowledged the existence and severity of her injuries, they refused, once again, to provide the medical attention she needed.  For example, the medical staff refused to provide Ms. MacDonald a wheelchair despite her repeated requests and clear inability to stand without assistance, which led to SCHOC personnel forcefully and painfully dragging Ms. MacDonald around the facility when she needed to be moved.

61.    The wanton, unjustified actions of SCSD, its officers, and agents on August 9, 2022, and August 10, 2022, caused Ms. MacDonald severe physical and emotional pain.

62.    The physical damage to Ms. MacDonald is detailed in SCSD medical department documents.  Such documents, written shortly after the attacks, note that Ms. MacDonald had suffered a "laceration on her left eyebrow 4 cm long" and ecchymosis along her left orbital, which was "c/w [consistent with] physical trauma."

63.    Upon information and belief, the assault that Ms. MacDonald suffered in SCSD custody caused an abnormal enlargement of the pupil in her left eye.  Even months after the incident, Ms. MacDonald's medical records indicate that her left pupil continued to be larger than her right pupil.  Ms. MacDonald suffered a cracked tooth from the incident that continues to cause her great pain and discomfort.  Ms. MacDonald also suffered a permanent scar above her left eye and permanent hair loss from having her hair pulled.

64.     Ms. MacDonald required a wheelchair to sit and rest for months following the assaults. Additionally, in the weeks and months following the assaults, Ms. MacDonald reported that she had trouble concentrating, which is consistent with a concussion.

65.     Since August 9, 2022, Ms. MacDonald has experienced symptoms of post-concussion syndrome. She frequently suffers from debilitating migraines and severe bouts of dizziness and nausea. Ms. MacDonald also suffers from floaters in her vision, pinpoint white flashes, and ringing in her ears. Activities as mundane as yawning or exercising aggravate the symptoms.

66.     The injuries that Ms. MacDonald suffered on August 9–10, 2022 at the SCHOC were so severe that the effects of those injuries continue to impact her life today.

67.     SCSD's policies, practices, and training encourages the use of excessive and unnecessary force by its officers.

68.     SCSD failed to implement adequate training programs that would teach officers to deescalate situations.

69.     The training and policies in place at SCSD fail to promote accountability, review, and restraint, creating a foreseeable risk that officers will engage in the use of excessive force without consequence.

70.     SCSD's pattern and practice of failing to discipline officers for the use of excessive force directly reflects SCSD's deliberate indifference to the individuals with whom the officers come into contact, including Ms. MacDonald.

71.     Despite the availability of clear and compelling video evidence showing excessive force by SCSD officers, the officers still falsified official reports to omit or distort the facts of Ms. MacDonald's violent assault.

72.    The actions of concealing officer misconduct through false reporting constitute a deliberate effort to obscure violations of constitutional rights, contributing to a pattern of unlawful behavior and harm at SCSD.

73.    SCSD's policies, practices, and training encourages officers and medical personnel to deny detainees adequate medical care and treatment.

74.    SCSD failed to implement adequate training programs that would teach officers and medical personnel to provide adequate medical care and treatment to detainees, including Ms. MacDonald.

75.    The training and policies in place at SCSD fail to promote accountability, review, and care, creating a foreseeable risk that officers and medical personnel would fail to provide adequate medical care and treatment to detainees without consequence.

76.    SCSD's pattern and practice of failing to discipline officers and medical personnel for failing to provide detainees with adequate medical care and treatment directly reflects SCSD's deliberate indifference to the individuals in its care, including Ms. MacDonald.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
**(Excessive Force)**
**(Claim Under the Civil Rights Act (42 U.S.C. § 1983))**
**(against Defendants Boyce and Dackers)**

77.    Plaintiff re-alleges and incorporates by reference the allegations contained in the previous paragraphs as if fully set forth herein.

78.    Defendants Boyce and Dackers, acting under color of state law, deprived Ms. MacDonald of her rights under the Fourth Amendment and the Due Process Clause of the Fourteenth Amendment to the Constitution of the United States.

79.     As the video footage demonstrates, Ms. MacDonald posed no immediate threat to Defendants at the time force was used and was not actively resisting or attempting to flee.

80.     Defendants Boyce and Dackers's decision to use force against Ms. MacDonald—by throwing her to the ground and causing serious injury—was objectively unreasonable.  An objectively reasonable officer on the scene under these circumstances would not have used such a level of force.

81.     No objectively reasonable officer under these circumstances could have viewed the conduct of Defendants Boyce and Dackers as lawful in light of clearly established law.

82.     The conduct of Defendants Boyce and Dackers was the direct and proximate cause of the violation of Ms. MacDonald's rights under the Fourth and Fourteenth amendments, which was the direct and proximate cause of acute and ongoing physical, mental, pecuniary, and other injuries.

## SECOND CLAIM FOR RELIEF
**(Assault and Battery)**
**(Claim Under State Tort Law (MASS. GEN. LAWS ch. 265 § 13A))**
**(against Defendants Boyce and Dackers)**

83.     Plaintiff re-alleges and incorporates by reference the allegations contained in the previous paragraphs as if fully set forth herein.

84.     Defendants Boyce and Dackers placed Ms. MacDonald in reasonable apprehension of immediate physical harm.

85.     Defendants Boyce and Dackers intended to and did cause harmful and offensive contact with Ms. MacDonald through the use of unjustified force.

86.     The conduct of Defendants Boyce and Dackers was the direct and proximate cause of Ms. MacDonald's physical, mental, pecuniary, and other injuries.

## THIRD CLAIM FOR RELIEF
**(Supervisory Liability)**
**(Claim Under the Civil Rights Act (42 U.S.C. § 1983))**
**(against Defendants Torres and Lynch)**

87.     Plaintiff re-alleges and incorporates by reference the allegations contained in the previous paragraphs as if fully set forth herein.

88.     Defendants Torres and Lynch, acting under color of state law, deprived Ms. MacDonald of her rights under the Fourth Amendment and the Due Process Clause of the Fourteenth Amendment to the Constitution of the United States.

89.     Defendants Torres and Lynch directly supervised, were knowledgeable of, and were deliberately indifferent to the use of objectively unreasonable and excessive force against Ms. MacDonald.

90.     The conduct of Defendants Torres and Lynch amounts to encouragement of, condonation of, and/or acquiescence to Boyce's and Dackers' use of excessive force.

91.     No objectively reasonable officer under these circumstances could have viewed the conduct of Defendants Torres and Lynch as lawful in light of clearly established law.

92.     The conduct of Defendants Torres and Lynch was the direct and proximate cause of the violation of Ms. MacDonald's rights under the Fourth and Fourteenth amendments, which was the direct and proximate cause of acute and ongoing physical, mental, pecuniary, and other injuries.

## FOURTH CLAIM FOR RELIEF
**(Excessive Force)**
**(Claim Under the Civil Rights Act (42 U.S.C. § 1983))**
**(against Defendant Jane Doe)**

93.     Plaintiff re-alleges and incorporates by reference the allegations contained in the previous paragraphs as if fully set forth herein.

94.     Defendant Jane Doe, acting under color of state law, deprived Ms. MacDonald of

her rights under the Fourth Amendment and the Due Process Clause of the Fourteenth Amendment to the Constitution of the United States.

95.     Ms. MacDonald posed no immediate threat to Defendant Jane Doe at the time force was used and was not actively resisting or attempting to flee.  Indeed, Ms. MacDonald was still largely incapacitated from her earlier injuries.

96.     Defendant Jane Doe's decision to use of force against Ms. MacDonald—by slamming her head into a metal desk and causing serious injury—was objectively unreasonable. An objectively reasonable officer on the scene under these circumstances would not have used such a level of force.

97.     No objectively reasonable officer under these circumstances could have viewed the conduct of Defendant Jane Doe as lawful in light of clearly established law.

98.     The conduct of Defendant Jane Doe was the direct and proximate cause of the violation of Ms. MacDonald's rights under the Fourth and Fourteenth amendments, which was the direct and proximate cause of acute and ongoing physical, mental, pecuniary, and other injuries.

### FIFTH CLAIM FOR RELIEF
**(Assault and Battery)**
**(Claim Under State Tort Law (MASS. GEN. LAWS ch. 265 § 13A))**
**(against Defendant Jane Doe)**

99.     Plaintiff re-alleges and incorporates by reference the allegations contained in the previous paragraphs as if fully set forth herein.

100.     Defendant Jane Doe placed Ms. MacDonald in reasonable apprehension of immediate physical harm.

101.     Defendant Jane Doe intended to and did cause harmful and offensive contact with Ms. MacDonald through the use of unjustified force.

102.     The conduct of Defendant Jane Doe was the direct and proximate cause of Ms.

MacDonald's physical, mental, pecuniary, and other injuries.

## SIXTH CLAIM FOR RELIEF
**(Excessive Force)**
**(Claim Under the Civil Rights Act (42 U.S.C. § 1983))**
**(against Defendant John Doe)**

103.    Plaintiff re-alleges and incorporates by reference the allegations contained in the previous paragraphs as if fully set forth herein.

104.    Defendant John Doe, acting under color of state law, deprived Ms. MacDonald of her rights under the Fourth Amendment and the Due Process Clause of the Fourteenth Amendment to the Constitution of the United States.

105.    Ms. MacDonald posed no immediate threat to Defendant John Doe at the time force was used and was not actively resisting or attempting to flee.  Indeed, Ms. MacDonald was still largely incapacitated from her earlier injuries.

106.    Defendant John Doe's decision to use of force against Ms. MacDonald—by slamming her face-first onto a solid bed frame and causing serious injury—was objectively unreasonable.  An objectively reasonable officer on the scene under these circumstances would not have used such a level of force.

107.    No objectively reasonable officer under these circumstances could have viewed the conduct of Defendant John Doe as lawful in light of clearly established law.

108.    The conduct of Defendant John Doe was the direct and proximate cause of the violation of Ms. MacDonald's rights under the Fourth and Fourteenth amendments, which was the direct and proximate cause of acute and ongoing physical, mental, pecuniary, and other injuries.

## SEVENTH CLAIM FOR RELIEF
**(Assault and Battery)**
**(Claim Under State Tort Law (MASS. GEN. LAWS ch. 265 § 13A))**
**(against Defendant John Doe)**

109.    Plaintiff re-alleges and incorporates by reference the allegations contained in the previous paragraphs as if fully set forth herein.

110.    Defendant John Doe placed Ms. MacDonald in reasonable apprehension of immediate physical harm.

111.    Defendant John Doe intended to and did cause harmful and offensive contact with Ms. MacDonald through the use of unjustified force.

112.    The conduct of Defendant John Doe was the direct and proximate cause of Ms. MacDonald's physical, mental, pecuniary, and other injuries.

## EIGHTH CLAIM FOR RELIEF
**(Excessive Force)**
**(Claim Under the Civil Rights Act (42 U.S.C. § 1983))**
**(against Defendants Barbour, Doldt, Wirtz, Marren, and Fitzgibbon)**

113.    Plaintiff re-alleges and incorporates by reference the allegations contained in the previous paragraphs as if fully set forth herein.

114.    Defendants Barbour, Doldt, Wirtz, Marren, and Fitzgibbon (the "Strip-Search Defendants"), acting under color of state law, deprived Ms. MacDonald of her rights under the Fourth Amendment and the Due Process Clause of the Fourteenth Amendment to the Constitution of the United States.

115.    As the video footage demonstrates, Ms. MacDonald posed no threat to Defendants at the time force was used.  She was not actively resisting or attempting to flee.

116.    The Strip-Search Defendants' decision to use force was objectively unreasonable. An objectively reasonable officer on the scene under these circumstances would not have used

such a level of force, nor would so many officers be reasonably required.

117.    The conduct of the Strip-Search Defendants was the direct and proximate cause of the violation of Ms. MacDonald's rights under the Fourth and Fourteenth amendments, which was the direct and proximate cause of acute and ongoing physical, mental, pecuniary, and other injuries.

### NINTH CLAIM FOR RELIEF
**(Assault and Battery)**
**(Claim Under State Tort Law (MASS. GEN. LAWS ch. 265 § 13A))**
**(against Defendants Barbour, Doldt, Wirtz, Marren, and Fitzgibbon)**

118.    Plaintiff re-alleges and incorporates by reference the allegations contained in the previous paragraphs as if fully set forth herein.

119.    The Strip-Search Defendants placed Ms. MacDonald in reasonable apprehension of immediate physical harm.

120.    The Strip-Search Defendants intended to and did cause harmful and offensive contact with Ms. MacDonald through the use of unjustified force.

121.    The conduct of the Strip-Search Defendants was the direct and proximate cause of Ms. MacDonald's physical, mental, pecuniary, and other injuries.

### TENTH CLAIM FOR RELIEF
**(Supervisory Liability)**
**(Claim Under the Civil Rights Act (42 U.S.C. § 1983))**
**(against Defendant Torres)**

122.    Plaintiff re-alleges and incorporates by reference the allegations contained in the previous paragraphs as if fully set forth herein.

123.    Defendant Torres, acting under color of state law, deprived Ms. MacDonald of her rights under the Fourth Amendment and the Due Process Clause of the Fourteenth Amendment to the Constitution of the United States.

124.     Defendant Torres directly supervised, was knowledgeable of, and was deliberately indifferent to the use of an objectively unreasonable and excessively invasive forced strip search of Ms. MacDonald.

125.     The conduct of Defendant Torres amounted to encouragement of, condonation of, and/or acquiescence to the Strip-Search Defendants' search.

126.     No objectively reasonable officer under these circumstances could have viewed the conduct of Defendant Torres as lawful in light of clearly established law.

127.     The conduct of Defendant Torres was the direct and proximate cause of the violation of Ms. MacDonald's rights under the Fourth and Fourteenth amendments, which was the direct and proximate cause of acute and ongoing physical, mental, pecuniary, and other injuries.

**ELEVENTH CLAIM FOR RELIEF**
**(Negligent/Intentional Infliction of Emotional Distress)**
**((Claim Under State Tort Law (MASS. GEN. LAWS ch. 265 § 13A))**
**(against all Defendants)**

128.     Plaintiff re-alleges and incorporates by reference the allegations contained in the previous paragraphs as if fully set forth herein.

129.     Defendants knew or should have known that their conduct was likely to result in emotional distress.

130.     The Defendants' conduct was extreme and outrageous and shocking to the conscience.

131.     The Defendants' conduct caused Plaintiff emotional distress of the nature and severity that no reasonable person could be expected to endure.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment as follows:

a.    Trial by jury;

b.    Entry of judgment of Plaintiff against Defendants on Plaintiff's claims for relief;

c.    Compensatory damages in an amount to be proven at trial;

d.    Costs and reasonable attorneys' fees;

e.    Such other relief as the Court deems just and proper.


Dated: August 1, 2025

Respectfully submitted,

Kinley MacDonald

By Her Attorneys,

Edwina Clarke (BBO #699702)
eclarke@zimmercitronclarke.com
David Zimmer (BBO #692715)
dzimmer@zimmercitronclarke.com
ZIMMER, CITRON & CLARKE LLP
130 Bishop Allen Drive
Cambridge, MA 02139 Telephone:
+1 617 676 9421

*Counsel for Kinley MacDonald*

/s/ Christie L. Larochelle
Christie L. Larochelle (BBO #705561)
CLarochelle@goodwinlaw.com
Eric T. Romeo (BBO #691591)
ERomeo@goodwinlaw.com
Laura Noerdlinger (BBO #711482)
LNoerdlinger@goodwinlaw.com
Jonathan E. Rankin (BBO #713572)
JRankin@goodwinlaw.com
Adrian Santiago Ortiz (BBO #713630)
ASantiagoOrtiz@goodwinlaw.com
GOODWIN PROCTER LLP
100 Northern Avenue
Boston, MA 02210
Telephone:    +1 617 570 1000
Facsimile:    +1 617 523 1231

*Appointed Limited Pro Bono Counsel for
Kinley MacDonald*

## CERTIFICATE OF SERVICE

I, Adrian Santiago Ortiz, do hereby certify that on this 1st day of August, 2025, the foregoing document was filed through the ECF system and sent electronically to the registered participants as identified on the Notice of Electronic Filing. I further certify that I served copy of the foregoing document via email on Allen Forbes (AForbes@scsdma.org), Counsel for the Suffolk County Sheriff's Department, who has agreed to accept service on behalf of Defendants Jared Dackers, Steven Boyce, William Torres, Jennifer Lynch, Daneka Barbour, Erik Doldt, James Wirtz, Mary Marren, and Daniel Fitzgibbon.

_____
Adrian Santiago Ortiz